1
2
3
4
5                  UNITED STATES DISTRICT COURT
6                  EASTERN DISTRICT OF WASHINGTON
7   JESSICA RAE WOODALL,              )   No. 1:16-CV-0190-LRS
                                      )
8                  Plaintiff,         )   **ORDER GRANTING**
                                      )   **DEFENDANT'S MOTION**
9                                     )   **FOR SUMMARY JUDGMENT,**
        vs.                           )   ***INTER ALIA***
10                                    )
    NANCY A. BERRYHILL,               )
11  Acting Commissioner of Social     )
    Security,                         )
12                                    )
                   Defendant.         )
13  _____ )

14         **BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment

15  (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 15).

16

17                          **JURISDICTION**

18         Jessica Rae Woodall, Plaintiff, applied for Title II Disability Insurance benefits

19  (DIB) and Title XVI Supplemental Security Income benefits (SSI) on May 15, 2012.

20  The applications were denied initially and on reconsideration.  Plaintiff timely

21  requested a hearing which was held on September 5, 2014 before Administrative Law

22  Judge (ALJ) Donna Walker.  Plaintiff testified at the hearing, as did  Vocational

23  Expert (VE) K. Diane Kramer.  On November 3, 2014, the ALJ issued a decision

24  finding the Plaintiff not disabled.  The Appeals Council denied a request for review

25  of the ALJ's decision, making that decision the Commissioner's final decision subject

26  to judicial review.  The Commissioner's final decision is appealable to district court

27  pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

28

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

1

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 32 years old. She has past relevant work experience as a fast food worker, cashier, parts delivery driver, food delivery driver, and server. Plaintiff alleges disability since June 28, 2010, on which date she was 28 years old. Plaintiff's date last insured for Title II DIB benefits was December 31, 2015.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational

///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

1  interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749
2  F.2d 577, 579 (9th Cir. 1984).

3       A decision supported by substantial evidence will still be set aside if the proper
4  legal standards were not applied in weighing the evidence and making the decision.
5  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir.
6  1987).

7                              **ISSUES**
8       Plaintiff argues the ALJ  erred in:  1) improperly weighing the medical
9  opinions; and 2) improperly rejecting Plaintiff's testimony about her symptoms.

10

11                            **DISCUSSION**
12  **SEQUENTIAL EVALUATION PROCESS**

13       The Social Security Act defines "disability" as the "inability to engage in any
14  substantial gainful activity by reason of any medically determinable physical or
15  mental impairment which can be expected to result in death or which has lasted or can
16  be expected to last for a continuous period of not less than twelve months."  42
17  U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  The Act also provides that a claimant
18  shall be determined to be under a disability only if her impairments are of such
19  severity that the claimant is not only unable to do her previous work but cannot,
20  considering her age, education and work experiences, engage in any other substantial
21  gainful work which exists in the national economy.  *Id*.

22       The Commissioner has established a five-step sequential evaluation process for
23  determining whether a person is disabled.  20 C.F.R. §§ 404.1520 and 416.920;
24  *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987).  Step one determines
25  if she is engaged in substantial gainful activities.  If she is, benefits are denied.  20
26  C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i).  If she is not, the decision-maker
27  proceeds to step two, which determines whether the claimant has a medically severe

28

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404,1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

consisting of seizure disorder, headaches, depression, anxiety, and personality disorder; 2) Plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the following non-exertional limitations: she can never climb ladders, ropes or scaffolds, or be exposed to hazardous machinery or heights; should avoid concentrated exposure to noises, fumes, odors, dusts, gases, and poor ventilation; has the ability to perform simple, repetitive tasks with superficial public contact working in proximity to, but not close cooperation, with others; 4) Plaintiff's RFC does allows her to perform her past relevant work as a fast food worker and cashier, and allows her to perform other jobs existing in significant numbers in the national economy, including laundry worker, electrical assembler and mail clerk. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

1  evidence in the record and consistent with the other evidence. *Andrews v. Shalala*,
2  53 F.3d 1035, 1041 (9th Cir. 1995).

3  Nurse practitioners, physicians' assistants, and therapists (physical and mental
4  health) are not "acceptable medical sources" for the purpose of establishing if a
5  claimant has a medically determinable impairment. 20 C.F.R. §§ 404.1513(a) and
6  416.913(a). Their opinions are, however, relevant to show the severity of an
7  impairment and how it affects a claimant's ability to work. 20 C.F.R. §§ 404.1513(d)
8  and 416.913(d).

9  Plaintiff started seeing John V. Billings, Advanced Registered Nurse
10  Practitioner (ARNP), for mental health issues beginning in 2010. In April 2012,
11  Billings completed a "Workfirst Documentation Request for Medical or Disability
12  Condition." Billings indicated Plaintiff had problems interacting with people and that
13  this would constitute a limitation on her ability to work. (AR at p. 317). He stated
14  she would be able to look for work, but does best with jobs in which she has limited
15  contact with others. (AR at p. 317). He indicated Plaintiff was limited to working for
16  1 to 10 hours per week because she "[h]as serious anxiety when she's in a room with
17  people she doesn't know." (AR at p. 317).

18  In August 2012, Plaintiff was examined by Jonathan W. Anderson, Ph.D., a
19  licensed clinical psychologist. Dr. Anderson's evaluation procedure consisted of a
20  clinical interview with Plaintiff, a review of available medical records, a modified
21  mini-mental status exam, and a Trail Making Test (Parts A & B). (AR at p. 371). He
22  diagnosed the Plaintiff with "Major Depressive Disorder, Single Episode, Mild to
23  Moderate, Currently on Medication," "Pain Disorder Associated With Both
24  Psychological Factors and A General Medical Condition," and "Personality Disorder
25  NOS [Not Otherwise Specified]." (AR at p. 376). He opined that Plaintiff's current

26
27
28

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

1   Global Assessment of Functioning (GAF) score was 55.[1]  (AR at p. 376).  Plaintiff

2   informed Dr. Anderson that the last time she spent time with friends was a couple of

3   weeks ago, although she denied having many friends.  (AR at p. 373).  Dr. Anderson

4   stated in relevant part:

5           [Plaintiff] does not appear to be resisting social interactions
            with friends, although she claimed to avoid unfamiliar individuals.
6           It is likely that she would adapt appropriately to change.

7           Based on the present evaluation and a review of available
            records, the passing of [Plaintiff's] father appears to have
8           resulted in severe emotional distress. [Plaintiff] is encouraged
            to speak with her counselor regarding bereavement issues.
9           It is probable that [Plaintiff] can sustain employment.

10          When asked what she would do if she was offered a job that
            started tomorrow, she replied, "I wouldn't be able to take it."
11          When asked to describe her perfect job, she replied, "I really
            like driving for a living."
12
    (AR at p. 377).
13
            At the time Plaintiff was examined by Dr. Anderson, she was undergoing
14
    counseling with Partners With Families & Children Spokane and described those
15
    counseling session as being helpful.  (AR at p. 372).  She began that counseling in
16
    June 2012.  She was referred by the Workfirst program "[t]o help with her anxiety
17
    and any other issues that may interfere with her returning to the work source."  (AR
18
    at p. 458).  At the time of intake, she was diagnosed with Anxiety NOS, Panic attack
19

20

21

22  _____

23          [1] A Global Assessment of Functioning (GAF) score of 51-60 indicates

24  "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic

25  attacks) or moderate difficulty in social, occupational, or school functioning (e.g.,

    few friends, conflicts with peers or co-workers)."  *American Psychiatric Ass'n,*
26
    *Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision
27
    2000)(DSM-IV-TR at p. 34).
28
    **ORDER GRANTING DEFENDANT'S**
    **MOTION FOR SUMMARY JUDGMENT- 7**

1  without agoraphobia, and assigned a GAF score of 50.[2]  In December 2013, Travis

2  W. Arnold, MSW., LSWAIC, MHP, CMHS, CDP[3], of Partners With Families &

3  Children, completed a "Workfirst Documentation Request for Medical or Disability

4  Condition" in which he noted that Plaintiff reported problems working in groups and

5  that her anxiety "goes up" and leads to panic attacks and her struggling to meet a

6  schedule.  (AR at p. 454).  He opined that Plaintiff was unable to participate at all in

7  work (AR at p. 454), although he thought this could be reversed in 12 months by her

8  working on overcoming barriers to being in public.  (AR at p. 455).

9      In August 2014, Plaintiff was referred by her attorney to Dennis R. Pollack,

10  Ph.D., for psychological testing. Dr. Pollack tested the Plaintiff on August 12 and 19,

11  2014.  The tests included the Clark-Beck Obsessive-Compulsive Inventory, the

12  Minnesota Multiphasic Personality Inventory-2 (MMPI-2), the Wechsler Adult

13  Intelligence Scale-IV (WAIS-IV), and the Millon Clinical Multiaxial Inventory-III

14  (MCMI-III).  (AR at p. 471).  It appears the WAIS-IV and MMPI-2 were conducted

15  on  August 12, and the other tests were conducted on August 19, 2014.

16      The results of the WAIS-IV gave Plaintiff a Full-scale IQ of 65 which is in the

17  "Extremely Low Range."  (AR at p.  474).  According to Dr. Pollack, Plaintiff's

18  WAIS-IV scores were "much lower than expected for someone who has worked as

19  a cashier and waitress."  (AR at p. 477).

---

[2]  A Global Assessment of Functioning (GAF) score of 41-50 means

"serious" symptoms or "serious" impairment in either social, occupational, or

school functioning. *American Psychiatric Ass'n, Diagnostic & Statistical Manual

of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR).

[3] MSW (Master of Social Work); LSWAIC (Licensed Social Work

Associate and Independent Clinical); MHP (Mental Health Professional); CMHS

(Child Mental Health Specialist); and CDP (Chemical Dependency Professional).

**ORDER GRANTING DEFENDANT'S**

**MOTION FOR SUMMARY JUDGMENT- 8**

The results of the MMPI-2 gave Plaintiff a "dramatically elevated F-scale score at t=120+," a score "so elevated as to not be interpretable." (AR at p. 475). According to Dr. Pollack:

> [P]laintiff was asked to return in order to discuss the issues raised by her markedly elevated MMPI-2F-scale score. She did indicate she must have not understood the items or that she may have accidentally marked them in the wrong way. She reaffirmed such issues as feeling that she is being plotted against. She explained that her work performance at her last job was found to be good by her regular manager. When a temporary manager came in[,] she was fired. She hears strange things when she is with people. She thinks that they are saying negative things about her. She can be out with a friend and she is convinced that she sees the same person behind them. Her friend will not see the person.

(AR at p. 476).

Plaintiff's MCMI-III profile suggested avoidance, somatization and anxiety, and the results of the Clark-Beck Obsessive-Compulsive Inventory were normal. (AR at p. 476).

Plaintiff's Trail Making Tests were "exceptionally abnormal and much poorer than expected" and indicated Plaintiff "was either malingering or that she has serious neuropsychological problems." (AR at p. 476). According to Dr. Pollack: "The results of the neuropsychological testing are markedly elevated and suggest a significant deficit that can only be clarified by good effort and additional testing of [Plaintiff]." (AR at p. 477).

Dr. Pollack reported that "[t]he results of the Validity Testing indicates that she was making good effort at the second testing." (AR at p. 477). Dr. Pollack summarized the testing as follows:

> This is a tale of two test dates. Her performance on the two dates are dramatically different. The testing from the first date gives scores of questionable reliability. The second test date scores are consistent with her medical records. She has received extensive treatment for numerous medical problems. Some of the problems can be substantiated while others were not. Given her performance during the second testing[,] it is clears that she suffers from Somatoform

**ORDER GRANTING DEFENDANT'S**

**MOTION FOR SUMMARY JUDGMENT- 9**

Disorder.  Retesting which would include additional neuro-psychological testing is called for given her medical history.

(AR at p. 477).

Dr. Pollack diagnosed Plaintiff with "Undifferentiated Somatoform Disorder" and assigned her a GAF score of 50.  (AR at p. 477).  He indicated that Plaintiff has a "moderate limitation" in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  He indicated that she has a "marked limitation" in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and a "marked limitation" in her ability to accept instructions and respond appropriately to criticism from supervisors.  (AR at p. 479).  "Moderate limitation" is defined as "[o]ccasional interference on the ability to function in a work setting (i.e., up to 1/3  of an 8 hour workday)," and "marked limitation" is defined as "[f]requent interference on the ability to function in a work setting (i.e., 1/3 to 2/3 of an 8 hour workday)."  (AR at p. 478).

Marian Martin, Ph.D., the clinical psychologist who testified at the hearing, concluded that based on the record as a whole, there was no support for a diagnosis of bipolar disorder.  (AR at p. 65).  Dr. Martin noted that Dr. Pollack did not diagnose the Plaintiff with an anxiety disorder.  (AR at p.66).  He also described the varying results of Dr. Pollack's testing as raising questions about Plaintiff's presentation of symptoms.  (AR at pp. 67-68).  Dr. Martin opined that Plaintiff was capable of working eight hours a day, five days a week on a sustained basis, provided the work involved simple, routine, repetitive type tasks and not dealing with the public a lot, "although again historically she's been able to do that it looks like pretty effectively." (AR at p. 69).

The ALJ gave greater weight to the opinions of Drs. Anderson and Martin. The ALJ found the opinions of the other treating and examining sources were not

**ORDER GRANTING DEFENDANT'S**

**MOTION FOR SUMMARY JUDGMENT- 10**

1  consistent with the objective findings of Dr. Anderson and because Dr. Martin had
2  an opportunity to review the evidence as a whole. (AR at pp. 34-36).

3       Plaintiff contends "all of the treating and examining opinions that the ALJ
4  discredited were utterly consistent . . . regarding mental health issues," but the record
5  clearly shows this to not be the case. Indeed, these medical sources were not even
6  consistent regarding the nature of Plaintiff's mental health diagnoses.

7       Plaintiff asserts the opinion of Mr. Arnold should be given "controlling
8  weight" pursuant to Social Security Ruling (SSR) 96-2p, but this is not so due to the
9  fact that Mr. Arnold is not a "treating source" as defined in 20 C.F.R. §§ 404.1502
10 and 416.902, but rather an "other source." He is not an "acceptable" medical source
11 per 20 C.F.R. §§ 404.1513 and 416.013 who could provide a "medical opinion" as
12 set forth in 20 C.F.R. §§ 404.1527 and 416.927.

13      Contrary to Plaintiff's assertion, Dr. Anderson's opinion was supported by his
14 own psychological testing and was a "germane" reason for giving it more weight than
15 the opinions of Mr. Billings and Mr. Arnold, both of whom are not "acceptable"
16 medical sources. Furthermore, the results from Dr. Pollack's testing cast doubt on his
17 opinion regarding the severity of Plaintiff's limitations. His test results constituted
18 a "specific and legitimate" reason for discounting his own opinion regarding
19 Plaintiff's limitations,[4] and a "germane" reason for discounting the opinions of Mr.
20 Billings and Mr. Arnold. If anything, Dr. Pollack's test results give credence to the
21 opinions of Drs. Anderson and Martin regarding the extent of Plaintiff's mental
22 limitations. Because of the results of the tests he administered, Dr. Pollack was
23 ///

24

25 _____

26      [4] The ALJ gave "little weight" to Dr. Pollack's opinion of Plaintiff's
27 limitations because "there was noted to be questions of reliability during the
   evaluation." (AR at p. 36).
28 **ORDER GRANTING DEFENDANT'S**
   **MOTION FOR SUMMARY JUDGMENT- 11**

essentially unable to arrive at any firm conclusion about the Plaintiff's mental health diagnoses and resulting limitations.

**CREDIBILITY**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014); *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between his testimony and his conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id*. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found the Plaintiff's "wide range of activities suggests that her limitations are not as significant as alleged." (AR at p. 30). Plaintiff asserts that none of these activities are inconsistent with or precluded by the mental and physical limitations she asserts, in particular her anxiety about being around others. She contends all of the activities can be performed alone or in a manner where contact with others can be avoided. The ALJ noted that Plaintiff spends time with others,

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

1    including family members.  (AR at p. 30).  At the hearing, Plaintiff testified she has

2    a friend who lives nearby (AR at p. 80).  In August 2012, Plaintiff told Mr. Arnold

3    that her best friend is her primary non-family support, that she (Plaintiff) was

4    currently living between her mother's place and her fiancee's mother's place, and that

5    for fun, she enjoyed going to the casino.  (AR at p. 467).  During her August 2012

6    examination by Dr. Anderson, Plaintiff told the doctor that the last time she had spent

7    with friends was  "a couple of weeks ago."  (AR at p. 373).  As noted above, Dr.

8    Anderson concluded  it did not appear that Plaintiff was "resisting social interactions

9    with friends."  (AR at p. 377).

10        The record reflects that Plaintiff's last seizure activity was in 2009 and that

11   since then, it has been well-controlled by medication.  (AR at p. 460).  Likewise,

12   Plaintiff reported in 2012 that  medication makes her headaches "manageable," (AR

13   at p. 460), confirming what she had previously reported in 2009.  (AR at p. 309).

14   Plaintiff told Dr. Anderson that she had daily headaches since age 12, but that

15   medication has been  "helpful."  (AR at p. 372). As the ALJ pointed out, these

16   headaches apparently did not preclude Plaintiff from being employed.  (AR at p. 32).

17   Plaintiff's earnings record (AR at p. 208) reflects that she was employed for a

18   significant number of years (1998-2010).  "Impairments that can be controlled

19   effectively with medication are not disabling for the purpose of determining

20   eligibility for [disability] benefits."  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d

21   1001, 1006 (9th Cir. 2006).

22        The ALJ noted that Plaintiff received unemployment benefits in 2011 (AR at

23   p. 30), more specifically that she was paid such benefits for three of four quarters in

24   2011.  (AR at pp. 215-16).  As the ALJ accurately pointed out, in order to receive

25   such benefits, the Plaintiff had to attest she was physically and mentally able to work,

26   and that she was actively seeking work.  Therefore, the receipt of such benefits would

27   conflict with her allegation that she was disabled beginning on June 28, 2010.  See

28

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

1   *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9ᵗʰ Cir. 2014)("Continued receipt of

2   unemployment benefits does cast doubt on a claim of disability, as it shows that an

3   applicant holds himself out as capable of working"). Plaintiff's response in her

4   summary judgment motion is that she alleges her disability onset date was July 28,

5   2012 (ECF No. 14 at p. 15), which would be after her receipt of unemployment

6   benefits. Plaintiff, however, does not cite where in the administrative record she ever

7   alleged July 28, 2012 as her onset date. Rather, the record reveals a consistent

8   understanding on the part of everyone that the alleged onset date was June 28, 2010.

9   At the hearing, the ALJ indicated June 28, 2010 was the alleged onset date (AR at p.

10  59 and p. 81), and her written decision reflected the same. (AR at p. 24).

11       Finally, as noted above, the testing performed by Drs. Anderson and Pollack

12  calls into question the severity of the mental limitations claimed by Plaintiff.

13       The ALJ provided "clear and convincing" reasons for discounting Plaintiff's

14  credibility which were corroborated by objective medical findings in the record.

15

16                              **CONCLUSION**

17       ALJ Walker rationally interpreted the evidence and "substantial evidence"-

18  more than a scintilla, less than a preponderance- supports her decision that Plaintiff

19  is not disabled.

20       Defendant's Motion For Summary Judgment (ECF No. 15) is **GRANTED** and

21  Plaintiff's Motion For Summary Judgment (ECF No. 14) is **DENIED**. The

22  Commissioner's decision is **AFFIRMED**..

23       **IT IS SO ORDERED.** The District Executive shall enter judgment

24  accordingly and forward copies of the judgment and this order to counsel of record.

25       **DATED** this   26th   day of July, 2017.

26                          *s/Lonny R. Suko*
                    _____
27                          LONNY R. SUKO
                    Senior United States District Judge
28
    **ORDER GRANTING DEFENDANT'S**

    **MOTION FOR SUMMARY JUDGMENT- 14**